UNITED STATES DISTRICT OF COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )    CRIMINAL NO. 05-10136-RGS
         V.              )
                         )
MARK NUTTER              )

GOVERNMENT'S TRIAL BRIEF

The United States of America, by Assistant United States Attorney William H. Connolly, submits this trial brief to assist the Court at trial of the above-captioned case by providing the following summary of the evidence it expects to introduce in support of the indictment.

On October 16, 2003, defendant Mark Nutter called 911 to report a fire at his place of business – a heating, ventilation and air conditioning installation company (HVAC) that was located in a commercial unit at 161D Midtech Drive in Yarmouth Massachusetts. The Yarmouth police and Fire Departments immediately responded to the call and found a smoldering fire that had already suppressed itself, but not before destroying the contents of 161D Midtech Drive. When fire officials entered the building they found no signs of forced entry – only that a door to the unit was slightly ajar with the deadbolt extended to prevent the door from completely shutting.

During an inspection of the premises, fire investigators found five, five-gallon red plastic gasoline containers. It was

1

apparent to the investigators, both from the odor and the burn patterns, that a large amount of accelerant had been poured throughout the premises.  A closer examination revealed obvious burn patterns consistent with liquid pour patterns, and several collected samples later tested positive for #2 fuel oil, also known as diesel fuel.  A State Fire Marshal's investigator concluded the fire was incendiary in nature, with multiple points of origin, having been deliberately set with the use of diesel fuel.

The subsequent investigation revealed that prior to October, 2003, Mark Nutter carried $125,000 in business contents insurance.  On October 3, 2003, thirteen days before the fire was set, Mark Nutter requested, through his insurance agent, an increase in his contents coverage from $125,000 to $500,000.  Although the increased policy had not become effective as of the day of the fire, Mark Nutter stated, during several interviews, that he believed his coverage had been increased to $500,000.

The investigation also revealed that in the months leading up to the fire, Mark Nutter began having financial troubles.  For example, as of the date of the fire, Mark Nutter owed three separate distributors (of HVAC supplies) a total of approximately $35,000, much of which was over 90 days delinquent.  In addition, Mark Nutter was having difficulty paying both his home and business rent on time, and was also several months in arrears on

an equipment lease for a large piece of machinery.  A financial analysis conducted by an ATF forensic accountant also revealed that Nutter's business was in decline in the months leading up to the fire and that Nutter failed to file tax returns in the years 1999-2003.

During several interviews conducted after the initiation of the investigation, Mark Nutter made several statements that the government contends were false and were designed to intentionally mislead investigators, in the hope of collecting on his insurance claim.  Among the many falsehoods, Mark Nutter stated that he increased his insurance at the urging of his brother Bob, who owned his own HVAC business.  The government expects Robert Nutter to refute this claim.  Mark Nutter also claimed to have been working on various jobs in the days leading up to the fire. The government expects to refute this claim as well.

During these same interviews, Mark Nutter explained that upon arriving at his business on the day of the fire, he noticed that the entry door was ajar with the deadbolt in the extended position.  Mark Nutter also claimed to have observed some damage to the door frame and stated that he experienced difficulty trying disengage the deadbolt on the night after the fire when he attempted to lock up his business.  The government expects to refute these statements through the testimony of a locksmith and an insurance investigator who examined the scene subsequent to

the fire.

Ultimately, Mark Nutter submitted an insurance claim for $297,805, well in excess of his original coverage, but consistent with his understanding that his insurance had been increased to $500,000.

## EVIDENTIARY ISSUES

The attorneys for the government have met with defense counsel to discuss various evidentiary issues. The government does not anticipate any major evidentiary disputes, but has listed below its basis for the submission of various non-testimonial evidence to be offered at trial. In addition, the government has submitted as separate filings a list of proposed exhibits as well as a summary of expert testimony.

1. <u>Business Records</u>: Among the many exhibits to offered by the government are hundreds of pages of business records, including bank records, records of creditors, insurance company records, and phone records of Mark Nutter. The government intends to offer these records accompanied by Keeper of Records certifications. The government does not anticipate an objection to the Keeper of Records certificates on <u>Crawford</u> grounds, but as of November 6, 2007, the government has not received confirmation from defense counsel.

2. <u>Summary Witness</u>: The government will offer the summary testimony of an ATF forensic accountant. Defense counsel has

indicated that he will not object to the government's use of a summary witness to present evidence of Mark Nutter's financial condition at the time of the fire.

    3.    <u>IRS Certificate of Non-existence</u>: The government intends to introduce a certificate of non-existence from the IRS to establish that Mark Nutter did not file personal or business income taxes for the years 1999-2003. In the event the defendant objects on <u>Crawford</u> grounds, the government will call an IRS agent to testify that he conducted a search of IRS records and that he found no record of tax filings for the relevant years.

    4.    <u>Recorded Telephone Call</u>: During the course of the ATF investigation, one of Mark Nutter's former employees agreed to make a recorded telephone to Mark Nutter. The government will offer, through the former employee, both a recording and a transcript of the telephone call.

    5.    <u>Examination Under Oath</u>: Mark Nutter submitted to two examinations under oath, pursuant to the terms of his insurance policy. The government will offer, through the insurance company's attorney who conducted the examination, a copy of each examination. Defense counsel has advised that he will not object to the use of the examinations on authentication grounds (as the interviews were not recorded), provided that the government excises the portions of the transcripts that contain conversations between the attorneys.

6.  <u>Recorded Interviews</u>: The government will offer two recorded interviews: a videotaped interview conducted by at the Yarmouth Police Department on the day of the fire and a tape recorded interview conducted by an insurance investigator several weeks after the fire. The government will offer both the tapes and transcripts of the interviews.

7.  <u>Payment History</u>: In addition to offering various business records to establish Mark Nutter's debts at the time of the charged offenses, the government will offer business records as well as live testimony to establish Mark Nutter's payment history with his various creditors, his landlords, and his insurance company.

> Respectfully submitted,
>
> /s/ William H. Connolly
> Assistant U.S. Attorney

Date: November 6, 2007