UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10136-RGS

MARK NUTTER

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON
PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE

July 27, 2010

STEARNS, D.J.

Mark Nutter, proceeding *pro se*, brought this petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Nutter makes two contentions: (1) that his conviction was obtained in violation of the constitutional protection against double jeopardy; and (2) that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment. He also requests an evidentiary hearing. For the reasons stated, Nutter's petition will be DENIED. The request for an evidentiary hearing will also be DENIED.

BACKGROUND

On November 20, 2007, following a six-day jury trial, Nutter was convicted of one count of arson (18 U.S.C. § 844(i)), three counts of mail fraud (18 U.S.C. § 1341), and one count of using fire to commit mail fraud (18 U.S.C. § 844(h)(1)). The charges arose from a fire that Nutter set at his heating and air conditioning business at 161 Mid Tech Drive in Yarmouth, Massachusetts. At trial, arson investigators testified to the discovery of five, five-gallon gasoline containers in the building; their determination that the premises had been saturated with diesel fuel before the fire had been ignited; and their ultimate

conclusion that the fire was arson.   After the fire, Nutter sought to collect insurance proceeds based on increased coverage that he had applied for only days before setting the fire.

On February 13, 2008, Nutter was sentenced to a total of 180 months of imprisonment.   Specifically, the court sentenced Nutter to sixty months (the mandatory minimum term) on the arson count (Count 1), to run concurrently with sixty-month sentences on each of the three mail fraud counts (Counts 2 through 4).   Nutter was also sentenced to a term of 120 months (the mandatory minimum term) for the use of fire to commit mail fraud (Count 5), to be served consecutively to the terms imposed on Counts 1 through 4.   The court also sentenced Nutter to a two-year term of supervised release.

Nutter filed a timely notice of appeal challenging his conviction and his sentence. Before the First Circuit Court of Appeals, his appellate counsel argued that the court: (1) erred in instructing the jury on the interstate commerce element of the crime of arson; (2) incorrectly decided that it had no authority to impose a sentence below the applicable statutory minimums; and (3) violated the Speedy Trial Act (STA), 18 U.S.C. § 3161 et seq., by granting various continuances without sufficient explanation.   On February 26, 2009, the Court of Appeals affirmed the convictions and sentence, rejecting all three of Nutter's arguments.   See United States v. Nutter, 311 F. App'x 374 (1st Cir. 2009) (per curiam). The Court concluded that: (1) the (unobjected to) jury instruction was not plainly erroneous; (2) the district court was required by statute to impose a ten-year mandatory minimum sentence on Count 5 to run consecutively to the five-year sentences imposed on Counts 1 through 4; and (3) Nutter had waived his STA claim by failing to move for dismissal on that ground prior to trial.   See id.   Nutter subsequently filed a petition for a rehearing en

2

banc, which was denied.

Nutter brought this section 2255 petition on November 4, 2009.  The United States filed an opposition on May 17, 2010.  On June 17, 2010, Nutter filed a reply to the opposition and a request for an evidentiary hearing.

DISCUSSION

Section 2255 is not a substitute for direct appeal, but rather provides post-conviction relief in four limited instances: "if the petitioner's sentence was (1) imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'"  Id., quoting Hill v. United States, 368 U.S. 424, 428 (1962).  In other words, a cognizable section 2255 claim that does not raise constitutional or jurisdictional issues must reveal "exceptional circumstances" that compel redress.  Id.  The petitioner bears the burden of demonstrating an entitlement to relief.  Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980).

I.    Procedural Default: Double Jeopardy

Where a defendant has procedurally defaulted by failing to raise a claim on direct appeal, he is barred from asserting that claim in a collateral attack on his conviction unless he can demonstrate cause for the default and actual prejudice (or actual innocence).  Murray v. Carrier, 477 U.S. 478, 485-486, 496 (1986).  Nutter argues that his conviction for the use of fire to commit mail fraud (Count 5) is duplicative of his convictions for arson and

3

mail fraud (Counts 1 through 4), and that the consecutive five and ten-year sentences imposed on these counts violate the Double Jeopardy Clause of the Fifth Amendment. The ultimate answer to Nutter's substantive argument is that precedent in the First Circuit (and elsewhere) is flatly opposite. See United States v. Patel, 370 F.3d 108, 115-116 (1st Cir. 2004) (separate sentences for mail fraud and using fire to commit mail fraud do not implicate double jeopardy, nor do the principles of double jeopardy bar the imposition of consecutive punishments for the two crimes). The court, however, need not reach the substance of the claim. Nutter did not raise this contention on direct appeal. Because he is in procedural default for failing to do so, he may only proceed by first demonstrating cause for the default and actual prejudice. Murray, 477 U.S. at 485-486, 496.[1] Nutter does not offer any explanation for failing to raise the issue on direct appeal (perhaps other than the implicit acknowledgment that it would have been futile to do so), nor does he identify any conceivable prejudice that he suffered as a result. See Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005). As Nutter has not satisfied his entry-level burden, the default forfeits any consideration of this ground of the petition. See Mack, 635 F.2d at 26-27.

II.   Ineffective Assistance of Counsel

Nutter next contends that he did not receive constitutionally effective assistance from his attorney, Stephen Weymouth. He makes three claims in this regard: (1) Weymouth did not object to the court's jury instructions or offer proposed instructions of his own; (2) counsel did not object to the court's "full explanation of the counts, or lack thereof"; and (3)

---

[1]Nutter's trial attorney had preserved the Double Jeopardy argument for appeal, although he acknowledged that First Circuit precedent was to the contrary. Sent. Hr'g Tr. at 8. See also Patel, 370 F.3d at 116.

counsel failed to negotiate and inform Nutter of a plea agreement.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence."  The right to counsel includes the right to effective counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  Effective counsel does not mean perfect counsel.  "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight."  Id. at 689.  The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id., quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955).  "First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms. . . .  This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense. . . .  The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation marks omitted).

To satisfy the first prong of the Strickland test, Nutter must prove that his counsel's performance was so deficient as to have been objectively unreasonable.  See United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993).  Counsel's conduct is considered reasonable if it falls "'within the range of competence demanded of attorneys in criminal cases.'"  United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978), quoting McMann v. Richardson, 397 U.S. 759, 770-771 (1970).

To satisfy the second <u>Strickland</u> prong, Nutter must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  While Nutter does not need to prove that his counsel's deficient conduct more likely than not altered the result, he must show that his counsel's errors "had some conceivable effect on the outcome of the proceeding." <u>Id</u>. at 693.  <u>See also</u> <u>Dugas v. Coplan</u>, 506 F.3d 1, 9 (1st Cir. 2007).

A.    <u>Failure to Provide or Object to Jury Instructions</u>

Nutter claims that Weymouth failed to object to the court's jury instructions (or offer alternative instructions of his own).  Both Weymouth and Nutter were present in the courtroom when the court distributed the instructions it proposed to give to the jury the following day.  Trial Tr. at 200, Nov. 19, 2007.  The next morning, the court convened a charging conference with all counsel present, and in which Weymouth fully participated. <u>Id</u>. at 199-209.  During the conference, Weymouth requested the court to instruct the jury that they were not to consider the fact that Nutter did not testify or even discuss it during their deliberations.  <u>Id</u>. at 200-201.  The court gave the requested special instruction. Weymouth's decision not to object to the instructions ultimately given at trial reasonably reflected the fact that the instructions had been thoroughly vetted by all concerned and that an objection in any event would have been futile as the instructions tracked well-tested and established law.  Moreover, Nutter has failed to show "that there is any probability, much less a reasonable probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been any different had [his] counsel objected to the instructions." <u>Gardner v. Ponte</u>, 817 F.2d 183, 187 (1st Cir. 1987).

B.    <u>Failure to Object to Full Explanation of Counts</u>

6

Nutter next contends that Weymouth did not "object to the Judge's instruction regarding full explanation of the counts."  Pet'r's Mot. at 5.  Nutter does not explain the meaning of this assertion, nor can the court discern one.  The government generously suggests that this contention may be likened to the one that Nutter raised on direct appeal.  Opp'n at 11.  Specifically, on direct appeal, Nutter's appellate counsel argued that the court's instruction on the interstate commerce element of arson for all practical purposes removed that element from the jury's consideration.  Nutter, 311 F. App'x at 376-377.  However, as the First Circuit pointed out,

> the [trial] court instructed the jury, twice, that "the government must prove" that the damaged property was used in or affected interstate commerce; the court then stated, "[a]s a matter of law" – not fact – that "rental property used for commercial purposes is in or affecting interstate commerce."  It never instructed the jury that the damaged property was, in fact, rental property used for commercial purposes or that the property otherwise was used in or affected interstate commerce.  Consequently, no error occurred.

Id. at 376 (internal citations omitted).  Under the circumstances, Weymouth's failure to object to the court's interstate commerce instruction was not unreasonable.  See Bosch, 584 F.2d at 1121.

C.    Failure to Inform of a Proposed Plea Agreement

In his final ineffective assistance of counsel claim, Nutter alleges that Weymouth never informed him of a potential plea agreement.  The government has submitted affidavits from Weymouth and William Connolly, the Assistant U.S. Attorney who was the chief prosecutor in the case.  In his affidavit, Weymouth states that his review of the evidence convinced him that the government's case against Nutter was very strong, and that he consequently advised Nutter to consider a change of plea.  Nutter, however, rejected the advice.  Weymouth Aff. ¶ 7.  At one point, Connolly had suggested to

7

Case 1:05-cr-10136-RGS   Document 106   Filed 07/27/10   Page 8 of 9

Weymouth that "if [Nutter] were to plead guilty to counts 1, 2, 3, and 4 of the indictment the government would dismiss count 5 . . . result[ing] in a sentence of 60 months.  The offer [however] had not been approved by [] Connolly's office and, as such, no plea agreement was generated."  Id. ¶ 8.  When Weymouth recommended to Nutter that the proposal nonetheless be pursued, Nutter stated that he would not plead guilty to something that he did not do.  Id.

Connolly states in his affidavit that he was never given the authority to bind his office to a plea that would result in a recommended sentence below the 15-year mandatory minimum sentence.  Connolly Aff. ¶ 5.  He informed Weymouth that he would advocate with his superiors for a sentence of less than 15 years *only if* Nutter first expressed willingness to accept such an offer, although he also told Weymouth that it was unlikely that they would authorize such a deal, "even at [his] urging."  Id. ¶¶ 3, 5.  Because Nutter refused to consider a plea, no proposed agreement was ever reduced to writing.

In his reply, Nutter requests that the court convene an evidentiary hearing to resolve alleged "inconsistencies" between the Weymouth and Connolly affidavits.  Contrary to Nutter's  assertions, the affidavits do not conflict.  Nor is any other reason given for a hearing.

> Courts are busy places.  Not surprisingly, then, evidentiary hearings on motions are the exception, not the rule.  We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion.  Thus, a party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment.

McGill, 11 F.3d at 225 (internal citations omitted).  A petitioner bears the burden of making "a sufficient threshold showing that material facts were in doubt or dispute."  United States

v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990).  A hearing is unnecessary when the "'motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.'"  McGill, 11 F.3d at 226, quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974).  Both considerations are active here.[2]

### ORDER

For the foregoing reasons, Nutter's motion to vacate, set aside, or correct his sentence is DENIED.  The motion for an evidentiary hearing is DENIED.  The petition is DISMISSED with prejudice.  The Clerk may now close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[2]Although Nutter claims that he would have accepted a plea bargain, no formal offer was ever approved by the United States Attorney.  The "plea offer" that Nutter claims he would have accepted is therefore pure speculation.  See Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010) ("Where . . . the result of counsel's alleged failure . . . is wholly speculative, Strickland's prejudice prong is not satisfied.").